RONALD F. LOPEZ, CA BAR NO. 111756, rflopez@thelen.com
MARLENE WILLIAMS, CA BAR NO. 197107, mjwilliams@thelen.com
**THELEN REID BROWN RAYSMAN & STEINER LLP**
101 Second Street, Suite 1800
San Francisco, CA 94105–3606
Telephone: (415) 371–1200
Facsimile: (415) 371–1211

ROBERT E. KREBS (SBN 57526), rkrebs@thelen.com
CHRISTOPHER L. OGDEN (SBN 235517), cogden@thelen.com
**THELEN REID BROWN RAYSMAN & STEINER LLP**
225 West San Carlos Street, Suite 1200
San Jose, CA 95113
Telephone: (408) 292–5800
Facsimile: (408) 287–8040

Attorneys for Plaintiffs
EXTREME CCTV, INC. and
FORWARD VISION CCTV LIMITED

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EXTREME CCTV, INC.,<br>a foreign corporation, and<br><br>FORWARD VISION CCTV LIMITED, a foreign corporation,<br><br>　　　　Plaintiffs,<br><br>　　vs.<br><br>SAY SECURITY GROUP USA,<br>an Ohio limited liability company,<br><br>　　　　Defendant. | Case No.: CV 07-04819 CW<br><br>**STIPULATED PERMANENT INJUNCTION; ORDER** |

1

2   Plaintiffs Extreme CCTV, Inc. ("Extreme") and Forward Vision CCTV Limited
3   ("Forward"), and Defendant SAY Security Group USA, LLC ("SAY"), by and through their
4   undersigned counsel, state as follows:

5   WHEREAS on or about September 19, 2007, EXTREME and FORWARD VISION
6   commenced a civil action against SAY in the United States District Court for the Northern District
7   of California, entitled *Extreme CCTV, Inc. and Forward Vision CCTV Limited v. Say Security*
8   *Group USA*, Civil Action No. C-07-04819 CW for patent infringement, trademark infringement,
9   unfair competition and trade dress infringement (the "Action");

10  WHEREAS on or about January 28, 2008, SAY filed its answer to the complaint in this
11  Action ("Answer") and its counterclaims for declaratory judgment of non-infringement of
12  trademark, trade dress and design patent; declaratory judgment of non-infringement, non-
13  inducement, and invalidity of design patent; petition for cancellation of trademark and declaratory
14  judgment of invalidity ("Counterclaims");

15  WHEREAS the parties agreed to settle the above-entitled action and entered into a
16  Settlement Agreement and Release on June 12, 2008, a true and correct copy of which is attached
17  hereto as Exhibit A;

18  WHEREAS the parties agree that the issuance of an order enjoining defendant's conduct as
19  identified in the Settlement Agreement and Release is an appropriate and effective way to resolve
20  this case;

21  NOW, THEREFORE, IT IS STIPULATED BY AND BETWEEN THE PARTIES THAT
22  THE COURT SHOULD ISSUE AN ORDER AS FOLLOWS:

23  In addition to complying with all agreed upon terms listed in the Settlement Agreement
24  and Release, defendant, SAY, shall from the date of entry of this Stipulated Permanent Injunction
25  and Order, agree that neither SAY, its past and present parent companies, affiliated companies,
26  subsidiary companies, predecessors, successors, and assigns, if any, nor its officers, directors, and
27  employees, stockholders, agents, servants, representatives, and attorneys, nor the predecessors,
28  successors, heirs and assigns of each of them, shall sell, distribute, market or otherwise advertise

1  the specific design of the product known as the "Titan PTZ" camera, descriptions of which are
2  attached hereto as <u>Exhibit B</u> and <u>Exhibit C</u>.

*Approved as to Form and Content and So Stipulated:*

DATED:     June 6, 2008                    THELEN REID BROWN RAYSMAN & STEINER LLP

                                           By /s/ Ronald F. Lopez
                                              Ronald F. Lopez
                                              Counsel for Extreme CCTV, Inc. and
                                              Forward Vision CCTV Limited

DATED:     June 6, 2008                    McQUAID BEDFORD & VAN ZANDT LLP

                                           By /s/ Arman Javid
                                              Arman Javid
                                              Counsel for Say Security Group USA

I, Ronald F. Lopez, hereby attest, pursuant to N.D. Cal. General Order No. 45, that the concurrence to the filing of this document has been obtained from each signatory hereto.

                                           /s/ Ronald F. Lopez
                                           Ronald F. Lopez
                                           Attorney for Plaintiffs

**PURSUANT TO STIPULATION, IT IS SO ORDERED.**

Dated: June 27, 2008
                                           The Honorable Claudia Wilken
                                           United States District Court Judge

Exhibit A

### SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This SETTLEMENT AGREEMENT AND MUTUAL RELEASE ("Agreement") is made and entered into voluntarily as of May 23, 2008, by and between Extreme CCTV, INC. ("EXTREME") and Forward Vision CCTV Limited ("FORWARD VISION") (collectively referred to as "Plaintiffs") on the one hand, and SAY Security Group ("SAY") on the other hand (EXTREME, FORWARD VISION, and SAY collectively referred to as "the parties").

### *RECITALS*

A. WHEREAS on or about September 19, 2007, EXTREME and FORWARD VISION commenced a civil action against SAY in the United States District Court for the Northern District of California, entitled *Extreme CCTV, Inc. and Forward Vision CCTV Limited v. SAY Security Group USA*, Civil Action No. C-07-04819 CW for patent infringement, trademark infringement, unfair competition and trade dress infringement (the "Action");

B. WHEREAS on or about January 28, 2008, SAY filed its answer to the complaint in this Action ("Answer") and its counterclaims for declaratory judgment of non-infringement of trademark, trade dress and design patent; declaratory judgment of non-infringement, non-inducement, and invalidity of design patent; petition for cancellation of trademark and declaratory judgment of invalidity ("Counterclaims");

C. WHEREAS SAY represents that it does not have any unity of ownership with, or investment or ownership interest in, SAY Security Group of Australia or SAY Security Group of China;

D. WHEREAS the parties intend to settle, resolve, and forever extinguish certain obligations, disputes and differences between the undersigned parties arising out of the claims and counterclaims asserted in the Action:

### *DEFINITIONS*

E. As used herein, "Patent at Issue" refers to United States Design Patent No. D452,697.

F. As used herein, "Trademarks at Issue" refers to United States Trademark Nos. 2,663,808 and 2,944,304, as listed on the Principal Register of the United States Patent and Trademark Office, for the trade names and trademarks "EXTREME CCTV" and "MOONDANCE," respectively.

G. As used herein, "Titan Products" refers to the products known as the "Titan Speed Dome" or "Titan PTZ" as shown in <u>Exhibit B</u> and <u>Exhibit C</u> hereto, including TN612-18S, TN612-26S, and TN612-35S, and any product that is substantially the same.

H. As used herein, "Moondance Trade Dress" refers to the intellectual property represented by the total image of the Moondance PowerDome PTZ Camera – IP68 product, including its distinctive shape and product design, as sold by EXTREME prior to the

signing date of this Agreement. The Moondance Trade Dress covers only the Titan Products as defined and nothing in this Agreement is intended to resolve whether changes in the Titan Products will infringe the Moondance Trade Dress.

## AGREEMENT

NOW THEREFORE, in consideration of the promises, releases and mutual covenants contained herein, the parties agree as follows:

1. ***Dismissal of Action.*** EXTREME and FORWARD VISION agree to dismiss the claims for (1) patent infringement, (2) trademark infringement, and (3) unfair competition with prejudice as against SAY pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure. EXTREME and FORWARD VISION agree to dismiss the claim for trade dress infringement with prejudice pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure. However, nothing in this Agreement resolves any potential claims that EXTREME and FORWARD VISION may have relating to any new PTZ cameras that SAY may introduce or sell in the US that may or could infringe Plaintiffs' intellectual property.

2. ***Dismissal of Counterclaims.*** SAY agrees to dismiss the above-referenced Counterclaims with prejudice as against EXTREME and FORWARD VISION pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure. SAY agrees to dismiss its Cancellation action No. 92048613 before the Trademark Trial and Appeal Board without prejudice prior to EXTREME'S deadline for filing an answer or with prejudice if EXTREME is forced to answer.

3. ***Validity and Ownership of Patents.*** The parties agree that FORWARD VISION is the owner of the Patent at Issue and that FORWARD VISION has valid and enforceable rights in its patent and has asserted a claim for patent infringement involving the Titan products.

4. ***Validity and Ownership of Trade Dress.*** The parties agree that EXTREME owns the Trademarks at Issue and the Moondance Trade Dress and it has valid and enforceable rights in the Moondance Trade Dress relating to its Moondance products and has asserted a claim for trade dress infringement involving the Titan products.

5. ***Stipulated Permanent Injunction.*** The parties agree to file in the above-entitled Court a Stipulated Permanent Injunction and [Proposed] Order following execution of this Agreement, a true and correct copy of which is attached hereto as Exhibit A. In accordance with the terms of the Stipulated Permanent Injunction, SAY agrees that neither SAY, its past and present parent companies, affiliated companies, subsidiary companies, predecessors, successors, and assigns, if any, nor its officers, directors, and employees, stockholders, agents, servants, representatives, and attorneys, nor the predecessors, successors, heirs and assigns of each of them, shall sell, distribute, market or otherwise advertise the specific design of the Titan Products, or any products substantially the same thereto.

6. ***Use of Trademarks.*** SAY agrees that it will discontinue any and all use of the Trademarks at Issue, including the terms "EXTREME CCTV" and "MOONDANCE" in any and all marketing and advertising of its products (including comparative advertising), including but not limited to the use of such terms as search terms, adwords, or keywords used by the Google

internet search engine or any other search engine, and further agrees that SAY, its past and present parent companies, affiliated companies, subsidiary companies, predecessors, successors, and assigns, if any, as well as its officers, directors, and employees, stockholders, agents, servants, representatives, and attorneys, and the predecessors, successors, heirs and assigns of each of them, will hereto refrain from the use of such terms as described in this paragraph.

7. *Use of Trade Dress.* SAY agrees that it will discontinue any and all use of the Moondance Trade Dress, and further agrees that SAY, its past and present parent companies, affiliated companies, subsidiary companies, predecessors, successors, and assigns, if any, as well as its officers, directors, and employees, stockholders, agents, servants, representatives, and attorneys, and the predecessors, successors, heirs and assigns of each of them, will hereto refrain from the use of the Moondance Trade Dress.

8. *Underwriters Laboratories ("UL") Certification.* SAY agrees that it will promptly notify in writing all previous buyers of the Titan Products that the product is not UL Certified.

9. *Settlement Authorization.* Each party hereto represents that it has the sole power to execute and deliver this Agreement and has secured all necessary authorizations.

10. *Representations and Warranties.* Each party hereto represents and warrants that it has not assigned or released to any other person or entity, either directly or indirectly, any of the items or matters which it releases in this Agreement.

11. *Choice of Law.* This Agreement shall be governed by and construed under the laws of the State of California.

12. *Severability.* If any portion of this Agreement shall be deemed by a court of competent jurisdiction to be invalid or unenforceable, the parties will modify that portion so as to make it enforceable and to comport with the parties' intentions, to the extent possible. If this cannot be achieved, those unenforceable provisions shall be deleted and the remaining portions shall be valid and enforceable.

13. *Legal Proceedings.* In the event any dispute arises between the parties hereto concerning any controversy arising out of this Agreement, the parties agree to resolve the dispute within the United States District Court, Northern District of California ("N.D. Cal."), to the extent the matter is subject to that court's jurisdiction. In the event of any disagreement as to jurisdiction, the matter shall be determined originally by the N.D. Cal. If the N.D. Cal. declines jurisdiction in the matter, the matter shall be resolved by binding arbitration according to the Commercial Rules of the American Arbitration Association, to the extent those rules do not contradict this Agreement.

14. *Attorney Fees.* In any dispute between the parties concerning any controversy arising out of this Agreement, the prevailing party shall be reimbursed for all costs including, but not limited to, reasonable attorneys' fees.

15. *Counterparts.* This Agreement may be executed (including facsimile signatures pending receipt of the original counterpart) in one or more counterparts, each of which shall be considered a complete original.

16. *Integration.* This Agreement, along with the exhibits hereto, constitutes a final and complete statement of the agreement between the parties and fully supersedes all prior agreements and/or negotiations, whether written or oral. However, the parties agree that this form of agreement is contingent on the Court entering the stipulated form of permanent injunction.

17. *Written Modification.* This Agreement cannot be modified except by a written document signed by the parties or their authorized representatives. Each term of this Agreement is contractual and not a mere recital.

18. *Release and Waiver.* Subject to compliance with the permanent injunction and the reservation of any claims by plaintiff relating to future products defendant may manufacture, import and sell in the US, each party to this Agreement releases and forever discharges every other party to this Agreement, its past and present parent companies, affiliated companies, subsidiary companies, predecessors, successors, and assigns, if any, as well as its officers, directors, and employees, stockholders, agents, servants, representatives, and attorneys, and the predecessors, successors, heirs and assigns of each of them, from any and all grievances, claims, demands, causes of action, obligations, damages, and/or liabilities of any nature whatsoever, whether known or unknown, suspected or claimed, relating or referring to the claims asserted herein, or that could have been asserted, in the Action, except as to the Counterclaim concerning the trademark EXTREME CCTV as described in paragraph 2.b. The parties further agree that each has been fully advised of the contents of California Civil Code Section 1542, and said Section, which reads as follows, and its benefits are expressly waived, subject to the exceptions in this paragraph:

> A General Release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.

19. *No Admission of Liability.* Nothing in this Agreement shall be construed as an acknowledgement, admission, concession, or stipulation of liability or wrongdoing by either party.

IN WITNESS THEREFORE, the undersigned have executed this Agreement.

DATED:   6/12/08                    EXTREME CCTV, INC.

                                    By /s/ Jack Gin
                                       its Director


DATED:   6/12/08                    FORWARD VISION CCTV LIMITED

                                    By /s/ Peter Beare
                                       its Managing Director

DATED:   6/12/08                    SAY SECURITY GROUP USA

                                    By /s/ Jason Szuch
                                       its President


*Approved as to Form and Content:*


DATED:   6/12/08                    THELEN REID BROWN RAYSMAN & STEINER LLP



                                    By /s/ Ronald F. Lopez
                                       Ronald F. Lopez
                                       Counsel for Extreme CCTV, Inc. and
                                       Forward Vision CCTV Limited


DATED:   6/12/08                    McQUAID BEDFORD & VAN ZANDT LLP



                                    By /s/ Arman Javid
                                       Arman Javid
                                       Counsel for Say Security Group USA

Exhibit B

The Titan PTZ speed dome: Explosion proof, Bullet Proof, Vandal Proof, Water Proof (IP68), Aluminum alloy and stainless steel design, 360... Page 1 of 4



## Products

**XOS DVRs**
- Rack DVR
- Compact DVR
- Lite

**Embedded**
- DVW-304N DVR
- DVW-304T DVR
- DVW-516 DVR
- DVW-816 DVR
- 4 Camera DVR Kit

**Mobile Surveillance**
- X6 Mobile DVR
- Mobile Accessories
- Mobile Cameras
- Roadguard
- MIL-Flashcam

**Cameras**
- PTZ
- Dome
- Box
- Mobile
- Weather Proof

**Network**
- NVR







* Explosion proof
* Bullet proof
* Vandal proof
* Water proof (IP68)



Overview

The Titan Speed Dome is designed to be resistant to impact from stones, bricks, normal explosion and even short gun bullets, it is ideal for high security and/or hazardous environments applications, such as:
Navy, military, nuclear plants, seafronts, harbors, shipping, embassy Police vehicles, armored vehicles, airports, high crime area and so on.

1. The Titan's body machined from .2 inches ~ .5 inches thick *Aluminum alloy* or *Stainless Steel*, true robust design:

http://www.saysecurity.com/thetitan.html    8/20/2007

The Titan PTZ speed dome: Explosion proof, Bullet Proof, Vandal Proof, Water Proof (IP68), Aryminium alloy and stainless steel design, 360 ... Page 2 of 4

The Titan PTZ speed dome: Explosion proof, Bullet Proof, Vandal Proof, Water Proof (IP68), Aryminium alloy and stainless steel design, 360 ... 

- Encoder/ Decoder

* *Explolosion Resistant*
* *Bullet Resistant*
* *Vandal Resistant*
* *Water Resistant (IP68)*

1. Flat designed optics window from filmed and toughened glass (.2 inches thick) offers distortion free image and maximum vandal resistant protection for IOP (Integrated Optical Package) camera module
2. Sealed to IP68, capable of withstanding complete submersion
3. 360° continuous rotation for both pan and tilt
4. User adjustable 360° angle yoke allows the camera to look vertically downwards from pole top

**Features**

- Built-in hi-resolution and big zoom IOP module (See camera SPECs)
- Built-in temperature control
- On-Screen-Display programming menu
- On-Screen-Display inside temperature
- On-Screen-Display pan/tilt/zoom position
- User definable temperature alert
- User definable 8 preset tours
- User definable preset frozen
- User definable 128 target presets and PTZ learn pattern
- User definable auto-scan/random scan/frame scan
- User definable scan speed
- User definable power-up action
- Preset speed : Pan: 250°/s ; Tilt:200°/s
- Variable manual pan speed 0.1°-150°/s
- Variable manual tilt speed 0.1°-80°/s

- Optional alarm interface unit
- RS-485 PELCO-P/D
- Proportional pan speed
- Surge protection & non-volatile memory
- IP68/CE/FCC/MA/RoHS compliance
- Explosion-Resistant compliance


356mm

http://www.saysecurity.com/thetitan.html    8/20/2007



### Mechanics

1. Thickness of die-cast Al alloy or stainless steel body: .2 inches ~ .5 inches
2. Thickness of flat designed optics window from filmed and toughened glass: 5mm
3. Continues working temperature -40°F -- +140°F
4. Dimension(LxDxH) 8.5x8.5x14inches
5. weight 18.7 LBS

### Electric specification

1. Input voltage: 18VAC—30VAC/18VDC-30VDC
2. Input power: 35VA no heater 50VA has heater
3. Heat up and defrost: control by temperature sensor

### Pan/Tilt specification

- Pan/tilt speed:  Pan 0.1°-150°/s   Tilt: 0.1°-80°/s
- Preset speed:  Pan 250°/s     Tilt 200°/s
- Scan: Auto/random/preset patrol
- Auto scan:    1°-40°/s
- Pan rotation:   360° continues
- Tilt rotation:    360°continuesPreset:
- 8 preset tours with dwell time 1~99seconds.

### Order Guide with IOP Camera Module

| Model | TN612-18S | TN612-26S | TN612-35S |
|---|---|---|---|
| Scan | 2:1 interlace | 2:1 interlace | 2:1 interlace |
| CCD | 1/4 inch CCD | 1/4" Super HAD | 1/4 inch CCD |
| Pixel | 752X582 PAL | 752X582 PAL | 752X582 PAL |

The Titan L12 speed dome: Explosion proof, Bullet Proof, Vandal Proof, Water Proof (IP68), Aluminum alloy and stainless steel design, 360° ... Page 4 of 4

| Lens | 4.1mm—73.8mm | 3.5mm—91mm | 3.5mm—125mm |
|---|---|---|---|
| Optical Zoom | 18X | 26X | 35X |
| Iris Ctrl | Auto/Manual | Auto/Manual | Auto/Manual |
| Focus Ctrl | Auto/Manual | Auto/Manual | Auto/Manual |
| Sensitivity | 1/4 shutter 0.05Lux Color 1/4 shutter 0.01Lux B/W | 0.7Lux/F1.4 color 0.001Lux/F1.4 B/W | 1/2 shutter 0.008Lux color 1/2 shutter 0.005 Lux B/W |
| synchronization | AC Line lock sync | AC Line lock sync | AC Line lock sync |
| BLC | Auto/Manual | Auto/Manual | Auto/Manual |
| Shutter | Auto/Manual | Auto/Manual | Auto/Manual |
| Gain Ctrl | Auto/Manual | Auto/Manual | Auto/Manual |
| S/N Ratio | >50dB | >50dB | 50dB |
| Video Output | 1Vp-p | 1Vp-p | 1Vp-p |
| High dynamic Range | -- | -- | 80X |












©COPYRIGHT. SAY Security, ALL RIGHTS RESERVED

http://www.saysecurity.com/thetitan.html    8/20/2007

Exhibit C



**Products**

- **XOS DVRs**
  - Rack DVR
  - Compact DVR
  - Lite
- **Embedded**
  - DVW-304N DVR
  - DVW-304T DVR
  - DVW-516 DVR
  - DVW-816 DVR
  - 4 Camera DVR Kit
- **Mobile Surveillance**
  - X6 Mobile DVR
  - Mobile Accessories
  - Mobile Cameras
  - Roadguard
  - MII-Flashcam
- **Cameras**
  - PTZ
  - Dome
  - Box
  - Mobile
- **Network**
  - NVR
  - Encoder/ Decoder

### The Titan
* Explosion proof
* Bullet proof
* Water proof (IP68)

 
 

### Accessories
- Titan Manual

### Overview

The Titan Speed Dome is designed to be resistant to impact from stones, bricks, normal explosion and even short gun bullets, it is ideal for high security and/or hazardous environments applications, such as:
Navy, military, nuclear plants, seafronts, harbors, shipping, embassy
Police vehicles, armored vehicles, airports, high crime area and so on.

1. The Titan's body machined from .2 inches ~ .5 inches thick *Aluminum alloy* or *Stainless Steel,* true robust design:

   * *Expolosion Resistant*
   * *Bullet Resistant*
   * *Vandal Resistant*
   * *Water Resistant (IP68)*

1. Flat designed optics window from filmed and toughened glass ( .2 inches thick) offers distortion free image and maximum vandal resistant protection for IOP (Integrated Optical Package) camera module
2. Sealed to IP68, capable of withstanding complete submersion
3. 360° continuous rotation for both pan and tilt
4. User adjustable 360 ° angle yoke allows the camera to look vertically downwards from pole top

### Features

- Built-in hi-resolution and big zoom IOP module (See camera SPECs)
- Built-in temperature control
- On-Screen-Display programming menu
- On-Screen-Display inside temperature

- On-Screen-Display pan/tilt/zoom position
- User definable temperature alert
- User definable 8 preset tours
- User definable preset frozen
- User definable 128 target presets and PTZ learn pattern
- User definable auto-scan/random scan/frame scan
- User definable scan speed
- User definable power-up action
- Preset speed : Pan: 250°/s ; Tilt:200°/s
- Variable manual pan speed 0.1°-150°/s
- Variable manual tilt speed 0.1°-80°/s



- Optional alarm interface unit
- RS-485 PELCO-P/D
- Proportional pan speed
- Surge protection & non-volatile memory
- IP68/CE/FCC/MA/RoHS compliance
- Explosion-Resistant compliance

Screen Shots

Specifications

### Mechanics

1. Thickness of die-cast Al alloy or stainless steel body: .2 inches ~ .5 inches
2. Thickness of flat designed optics window from filmed and toughened glass: 5mm
3. Continues working temperature -40°F -- +140°F
4. Dimension(LxDxH) 8.5x8.5x14inches
5. weight 18.7 LBS

### Electric specification

1. Input voltage: 18VAC—30VAC/18VDC-30VDC
2. Input power:   35VA no heater 50VA has heater
3. Heat up and defrost: control by temperature sensor

### Pan/Tilt specification

- Pan/tilt speed: Pan 0.1°-150°/s    Tilt: 0.1°-80°/s
- Preset speed: Pan 250°/s    Tilt 200°/s
- Scan: Auto/random/preset patrol
- Auto scan:    1°-40°/s
- Pan rotation:   360° continues
- Tilt rotation:    360°continuesPreset:
- 8 preset tours with dwell time 1~99seconds.

**Order Guide with IOP Camera Module**

| Model | TN612-18S | TN612-26S | TN612-35S |
|---|---|---|---|
| Scan | 2:1 interlace | 2:1 interlace | 2:1 interlace |
| CCD | 1/4 inch CCD | 1/4'' Super HAD | 1/4 inch CCD |
| Pixel | 752X582 PAL | 752X582 PAL | 752X582 PAL |
| Lens | 4.1mm—73.8mm | 3.5mm—91mm | 3.5mm—125mm |
| Optical Zoom | 18X | 26X | 35X |
| Iris Ctrl | Auto/Manual | Auto/Manual | Auto/Manual |
| Focus Ctrl | Auto/Manual | Auto/Manual | Auto/Manual |
| Sensitivity | 1/4 shutter 0.05Lux Color 1/4 shutter 0.01Lux B/W | 0.7Lux/F1.4 color 0.001Lux/F1.4 B/W | 1/2 shutter 0.008Lux color 1/2 shutter 0.005 Lux B/W |
| synchronization | AC Line lock sync | AC Line lock sync | AC Line lock sync |
| BLC | Auto/Manual | Auto/Manual | Auto/Manual |
| Shutter | Auto/Manual | Auto/Manual | Auto/Manual |
| Gain Ctrl | Auto/Manual | Auto/Manual | Auto/Manual |
| S/N Ratio | >50dB | >50dB | 50dB |
| Video Output | 1Vp-p | 1Vp-p | 1Vp-p |
| High dynamic Range | -- | -- | 80X |

  

©COPYRIGHT. SAY Security. ALL RIGHTS RESERVED

Toll Free
800-464-0831